JEFFCOAT *v*. HARPER, ADMINISTRATOR.

5-581                                           276 S. W. 2d 429

Opinion delivered March 14, 1955.

[Rehearing denied April 11, 1955.]

*A. F. Triplett,* for appellant.

*Sid J. Reid,* for appellee.

GEORGE ROSE SMITH, J. J. D. Koon, Jr., died testate on November 13, 1949, survived by his widow, Mary Koon. Mrs. Koon, who was insane at the time of her husband's death, died about December 10, 1952, without having elected to take against her husband's will. Her collateral heirs, the appellants, petitioned the probate court to award to them (a) that part of the Koon estate that Mrs. Koon would have received had she elected to renounce her husband's will, (b) all monies on hand at the death of Koon and all rents and profits collected by his executor during Mrs. Koon's survivorship and not used for her benefit, and (c) the allowance of $1,000 that is provided by statute for a widow. The probate court having rejected all three demands, the same contentions are now pressed in this court.

I. Koon's will was filed for probate on December 16, 1949. The Probate Code, Ark. Stats. 1947, § 60-503, allows a surviving spouse some seven months in which to elect to take against the will, but it is conceded that Mrs. Koon did not exercise that option. The appellants contend, in substance although not in so many words, that they are now entitled to renounce the will. To support this contention they rely upon the fact that Mrs. Koon was insane and upon the fact that the clerk of the probate court failed to give the widow notice of her privilege of election, as the Probate Code contemplates. Ark. Stats., § 60-502.

Many authorities are discussed in the briefs, but we find it unnecessary to look beyond the explicit language

of the statute. Section 37 of the Probate Code reads: "The right of election of the surviving spouse is personal. It is not transferable and does not survive the surviving spouse. The guardian of the estate of an incompetent surviving spouse may, when authorized by the court having jurisdiction over the estate of the ward, elect to take against the will in the ward's behalf." Ark. Stats., § 60-505.

The legislature could not have declared more plainly that the right of election is personal, that it does not survive the surviving spouse. Furthermore, the statute takes into account the possibility of the surviving spouse's insanity, authorizing the guardian to make the choice for his ward. The appellants are not helped by the fact that no guardian was appointed for Mrs. Koon, even though Koon suggested in his will that his executor seek the appointment if a guardianship became necessary. If a renunciation of the will would have been to Mrs. Koon's best interest—an assumption that we are by no means willing to accept—there was nothing to prevent the appellants from having a guardian appointed within the time allowed for the exercise of the right of election. It is now too late for their inaction to be remedied. The statutory declaration that the right of election is personal to the widow certainly carries the implication that the right is intended for her personal benefit. A renunciation of the Koon will at this time would be of no value to the widow, who is dead. To allow the appellants that privilege would violate the spirit of the statute as well as its letter.

Nor does it matter that the probate clerk failed to inform Mrs. Koon of her choice in the matter. The Code provides clearly enough that this notice is not jurisdictional, Ark. Stats., § 62-2101; so the clerk's oversight was an irregularity rather than a fundamental defect in the proceedings. Such an error cannot be a basis for disregarding the positive declaration that the right of election does not survive.

II. Next, the appellants demand of Koon's executor an accounting of the monies on hand at the testator's death and of the rents and profits collected during Mrs. Koon's survivorship. It is the appellants' contention that Koon's will gave his widow a vested right in these funds, so that the claim passed to the appellants upon the death of their kinswoman. This contention involves a construction of these pertinent parts of the will:

"Second: I desire and direct that my beloved wife, Mary Koon, and my dear brother, J. E. Koon, have all rents and profits arriving [arising] from and out of my estate for their care, support and maintenance for and during their natural lives. In the event that the income aforesaid is not sufficient for this purpose, then I desire that all necessary orders be secured from court authorizing the sale of so much of my timber or timbered lands, lots, houses, gin or any other property that I may die seized and/or possessed that will accomplish this purpose. Any and all monies received from any property aforesaid or any money that I may have at my decease shall be turned over to my Executor . . . **and disbursed by him for the purposes hereinbefore mentioned.**

"Third: It is my desire that my Executor . . . shall employ some good, kind lady to stay with and be a companion to my beloved wife, Mary Koon, who is not in good health and does and will need the kind consideration, affection and sympathetic understanding of a congenial companion. I further direct that in event that the health of my beloved wife should become such that she needs treatment in a sanatorium or hospital, then it is my wish that she be placed in a private institution and the expense of such treatment and the employment of a companion for her as herein requested be paid out of my estate aforesaid and in the same manner as indicated in paragraph two (2) for her care, support and maintenance.

"Fourth: I further desire that my Executor . . . shall consult with and advise my wife pertaining to any matters of business or otherwise, and in event that she

becomes physically or mentally unable to properly manage her affairs then it is my wish that my Executor take out papers and be appointed her Guardian.

. &ast; &ast; &ast; &ast; &ast;

"Eighth: After the decease of my beloved wife and brother aforesaid, all the residue of my estate of whatever kind after the above has been complied with I devise and bequeath Charlie Koon, Sophronia Hoffman Parrish, my brother and sister, and unto the bodily heirs of my deceased brothers and sisters, in fee simple. . . ." (These residuary legatees, together with the executor, are the appellees in the case.)

In seeking the testator's intention we regard as important the following facts, all of which were stipulated. Mrs. Koon was judicially declared to be insane in 1931 and was committed to the State Hospital. Later on she was released and resided in Sheridan until she was confined to a convalescent home about a year before her husband's death. She was insane at the time of Koon's death in 1949 and so remained until her own death in 1952. During her survivorship Koon's executor paid the expense of her care in the convalescent home. The other life beneficiary, J. E. Koon, predeceased the testator, which gives rise to the appellants' contention that Mrs. Koon had a vested right to all the rents and profits rather than to only half of them.

It will be noted that the second paragraph of the will directed that the decedent's widow and brother "have all rents and profits . . . for their care, support and maintenance." There is much authority for the view that language such as this, even when coupled with a power to invade the principal of the estate, gives the life beneficiary a right to the entire income, whether or not all of it is actually needed for maintenance. In this view the testator's reference to care and support is construed as an explanation of the purpose of the gift rather than as a limitation on the amount of income to which the life beneficiary is entitled. *Carpenter* v. *Smith*, 79 R. I. 326, 89 A. 2d 168; *Dooley* v. *Penland*, 156 Tenn.

284, 300 S. W. 9. We are urged by the appellants to follow that reasoning in the case at bar.

However meritorious this argument might be if the second paragraph of theKoon will stood alone, its force is lost when the will is considered as a whole. We think it pretty clear that Koon foresaw, and provided for, the possibility that his widow might be either sane or insane. It will be remembered that Mrs. Koon was committed to an asylum in 1931 and was later released. Her discharge gives rise to an inference of restored sanity, *Brown* v. *State*, 219 Ark. 647, 243 S. W. 2d 938, although here it is stipulated that Mrs. Koon was insane from 1931 until her death. Nevertheless her discharge does suggest an improvement in her condition, and it is plain that Koon, in writing his will in 1944, thought it possible that she would again become of sound mind. Koon directed his executor to consult with Mrs. Koon about matters of business, indicating clearly that Koon did not consider his wife's condition to be incurable. At the same time Koon also provided for the continuation of his wife's disability.

In our opinion paragraph two was meant to govern, as far as Mary Koon was concerned, only while she was mentally competent. In that event it was natural to direct that she have the rents and profits, as she would be able to look after them. But in paragraph three Koon anticipated the possibility that his widow might have to be treated in a sanatorium, which is just what happened. He directed that the expense of treatment be paid for "in the same manner as indicated in paragraph two (2) for her care, support and maintenance." We take the phrase "in the same manner" to mean that the required expenditures were to be made primarily from income, with a secondary power to invade the *corpus* if necessary. There would be no reason to pay over the entire income to an insane life beneficiary, whose needs had been provided for, and we are convinced that Koon did not so intend. We must reject the contention that the will vested in Mrs. Koon, despite her insanity, a right to the entire rents and profits. The trial court correctly

held that unexpended income passed to the appellees under the residuary clause.

The contention that Mary Koon was bequeathed the monies on hand at Koon's death is based upon the last sentence of paragraph two, which directs that such monies be turned over to the executor and disbursed by him for the purposes already specified. When this paragraph is read as whole it can hardly be doubted that Koon meant for such funds to become a part of the principal of the estate and to be disbursed only if the rents and profits proved insufficient for the care and maintenance of the two life beneficiaries.

III. With respect to the statutory allowance of $1,000, which was not set aside to Mrs. Koon during her lifetime, we see no substantial difference between the present statute, Ark. Stats., § 62-2501, and the earlier law that was construed in *Barnes* v. *Cooper,* 204 Ark. 118, 161 S. W. 2d 8. There the widow outlived her husband by only half an hour and so, like Mary Koon, was not conscious of the right to claim the allowance. We held, however, that the right was personal to the widow and did not pass to her heirs. The same reasoning applies to the present statute.

Affirmed.